UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SANDPIPER ISLE CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.                                              Case No:   2:21-cv-105-JLB-MRM

EMPIRE INDEMNITY INSURANCE
COMPANY,

    Defendant.
_____

## ORDER

Sandpiper Isle Condominium Association, Inc. ("Sandpiper") seeks punitive damages from its insurer, Empire Indemnity Insurance Company ("Empire"), for allegedly handling Sandpiper's insurance claim in bad faith.   Empire moves to dismiss Sandpiper's punitive damages request, arguing that Sandpiper has not pleaded Empire has a general business practice of acting recklessly toward an insured's rights under section 624.155, Florida Statutes.   (Doc. 43.)   The Court agrees.   Beyond alleging how Empire handled its claim, Sandpiper identifies only one other comparable instance.   Such a showing, the Court finds, fails to constitute sufficient frequency establishing a general business practice.   Accordingly, Count II of the Amended Complaint (Doc. 42 at 5–7) is **DISMISSED without prejudice**.

## BACKGROUND

Sandpiper filed an insurance claim with Empire after it sustained property damage during Hurricane Irma.   (Doc. 42 at ¶¶ 7–11.)   Empire "accepted coverage

for the claim," but the parties disagreed over the valuation of the damage. (Id. at ¶¶ 13–14.) Empire then invoked the policy's appraisal provision. (Id. at ¶ 17.) The appraisal panel issued an award in favor of Sandpiper but Empire "failed to tender proper insurance benefits . . . until over two (2) years following the filing of" Sandpiper's Civil Remedy Notice of Insurer Violations. (Id. at ¶¶ 18–19 (emphasis in original).)

Empire removed Sandpiper's complaint from Florida state court to this Court. (Doc. 1.) Sandpiper then amended its pleading to include a request for punitive damages under Florida law. (Doc. 42 at ¶¶ 32–36.) It alleges that Empire intentionally subjects insureds, like Sandpiper, to "an error-ridden, lackadaisical adjustment process" or "suggest[s] improper repair methodology," aiming to reduce Empire's payments. (Id. at ¶ 32.) Sandpiper's pleading details how Empire handled its claim in this way. (Id. at ¶ 34.) And Sandpiper also notes one other instance in which "Empire engaged in conduct to limit their [sic] financial obligations to the insured, including a similar investigation process . . . ." (Id. at ¶ 35.) Thus, under sections 624.155 and 768.72, Florida Statutes, Sandpiper seeks an award of punitive damages on its bad faith claim.

## LEGAL STANDARD

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). A complaint must contain "a short and plain statement of

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

## DISCUSSION

Empire argues that Sandpiper's allegations "fall[] woefully short in meeting the requirements to sustain a punitive damage claim." (Doc. 43 at 2.) As to such damages, Florida law states:

> (5) No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:
>
> (a) Willful, wanton, and malicious;
>
> (b) In reckless disregard for the rights of any insured; or
>
> (c) In reckless disregard for the rights of a beneficiary under a life insurance contract.

Fla. Stat. § 624.155(5)(a)–(c) (emphasis added). Further, "[u]nder Florida law, merely setting forth conclusory allegations in the complaint is insufficient to entitle a claimant to recover punitive damages. Instead, a plaintiff must plead specific acts committed by a defendant." Porter v. Ogden, Newell & Welch, 241 F.3d 1334, 1341 (11th Cir. 2001) (discussing section 768.72's requirements for a prayer of punitive damages).

Here, even accepting that Sandpiper adequately alleges Empire acted in reckless disregard for its rights under the policy, (see Doc. 42 at ¶ 34), it has not shown that Empire has a general business practice of doing so.[1]  It argues that the "general business practice is pled within Sandpiper's allegations at Paragraphs 32, 33, and 36 of the Amended Complaint."  (Doc. 45 at 3.)  Paragraph 32, however, only describes how Empire acted with reckless disregard, not how often it acted this way.  (Doc. 42 at ¶ 32.)  Paragraph 33 merely states in a conclusory fashion that "[t]his conduct has been so ingrained within Empire it constitutes a general business practice," but does not otherwise allege how this conduct has become so ingrained.  And paragraph 36, in an equally conclusory manner, states that "Sandpiper believes such conduct ran rampant within Empire prior to and at the time of the Claim, and further believes that such conduct continues with Empire today."  (Id. at ¶ 36.)  Yet Sandpiper does not explain how many different claims this "rampant" behavior occurred in or over what span of time to thereby allow the Court to gauge any modicum of frequency.

Sandpiper also argues that "it is the implementation of the methodology that gives rise to such conduct being a business practice."  (Doc. 45 at 3.)  To show this

---

[1] The Court disagrees with Empire that Sandpiper has merely alleged a routine dispute over valuation.  (Doc. 43 at 5–6; Doc. 48 at 2–3.)  To the contrary, Sandpiper alleges that Empire engaged in a "haphazard inspection" giving rise to an "improper assessment of the claim" resulting in a re-inspection that used "an improper [repair] method" resulting in a severe undervaluation of Sandpiper's damages.  (See Doc. 42 at ¶ 34.)  This, coupled with the allegations of unjustified delay, suffice at the pleading stage to show that Empire acted with reckless disregard for Sandpiper's rights under the policy.

implementation, though, it points only to <u>one</u> other claim Empire handled. (<u>See</u> Doc. 42 at ¶ 35.)   Stripping away the conclusory allegations, and others directed specifically at how Empire handled Sandpiper's claim, Sandpiper's pleading "fail[s] to sufficiently implicate Defendant's 'general business practices.'" <u>316, Inc. v. Maryland Cas. Co.</u>, 625 F. Supp. 2d 1179, 1182 (N.D. Fla. 2008). Sandpiper cannot plausibly allege that Empire implemented its alleged methodology with such frequency as to constitute a general business practice by relying on only one other insurance case—even if Sandpiper argues "[i]t is beyond coincidence that both claims were handled in [a similar] fashion."   (Doc. 45 at 3); <u>see also</u> <u>Howell-Demarest v. State Farm Mut. Auto. Ins. Co.</u>, 673 So. 2d 526, 529 (Fla. 4th DCA 1996) (evidence of insured's claim and three other cases against insurer insufficient to establish general business practice to survive motion for directed verdict).

  Sandpiper cites no authority suggesting that only one other claim—handled, "[u]pon information and belief," similarly to the insured's own claim—plausibly constitutes a general business practice.   Accepting its allegations as true, Sandpiper has shown, at most, that Empire ostensibly handled two claims in a similar manner.   Much like the insured in <u>316, Inc.</u>, Sandpiper's pleading "fails to contain enough factual matter (taken as true even if doubtful in fact) to establish a 'plausible,' as opposed to merely a 'possible' or 'speculative,' entitlement to punitive damages."   625 F. Supp. 2d at 1182 (citing <u>Twombly</u>, 550 U.S. at 555–57).   Nor

will the Court allow Sandpiper "to proceed with discovery into other claims to find how rampant this conduct ran within Empire." (Doc. 45 at 5.)

Sandpiper's pleading must contain sufficient factual allegations to state a claim for relief on its face. Taking all into account, it is therefore inappropriate for Sandpiper to proceed to merits discovery on the Complaint before the Court, hoping to support a speculative allegation after the fact. See Iqbal, 556 U.S. at 678–79.

Accordingly, it is **ORDERED**:

1. Empire's motion to dismiss (Doc. 43) is **GRANTED**.

2. Count II of Sandpiper's Complaint seeking punitive damages (Doc. 42 at 5–7) is **DISMISSED without prejudice**.

3. **On or before July 12, 2022**, Sandpiper is **DIRECTED** to file an amended pleading consistent with this Order, either omitting its request for punitive damages or including sufficient factual allegations supporting the same.

**ORDERED** at Fort Myers, Florida, on June 28, 2022.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE