UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SANDPIPER ISLE CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.    Case No:  2:21-cv-105-JLB-KCD

EMPIRE INDEMNITY INSURANCE
COMPANY,

    Defendant.
_____/

# **ORDER**[1]

Sandpiper Isle Condominium Association, Inc. ("Sandpiper") seeks punitive damages from its insurer, Empire Indemnity Insurance Company ("Empire"), for allegedly handling Sandpiper's insurance claim in bad faith. Empire moves to dismiss Sandpiper's punitive damages request, arguing that Sandpiper has failed to plead Empire has a general business practice of acting recklessly toward insureds' rights under section 624.155, Florida Statutes.  (Doc. 79.)

---

[1] Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

In its previous complaint, Sandpiper identified only one instance comparable to its own allegedly mishandled claim. The Court found that showing "fail[ed] to constitute sufficient frequency establishing a general business practice" and dismissed Sandpiper's prayer for punitive damages without prejudice. (Doc. 75.)

Now, in its Second Amended Complaint, Sandpiper describes its own experience with Empire's claim handling, along with four examples that share significant similarities with its own. The Court concludes this showing is enough to survive Empire's motion to dismiss. Empire's motion to dismiss (Doc. 79) is therefore **DENIED**.

## BACKGROUND

Sandpiper filed an insurance claim with Empire after it sustained property damage during Hurricane Irma. (Doc. 77 ¶¶ 7–11.) Empire "accepted coverage for the claim," but the parties disagreed over the damage valuation. (Doc. 77 ¶ 13.) Sandpiper alleges Empire sought to limit its exposure by "suggesting an improper method for repairs": "the 'harvesting' of roof tiles from one roof, paid for by EMPIRE, to be utilized in 'repairing' the remaining damage to other roofs." (Doc. 77 ¶¶ 14, 34.)

In response, Sandpiper filed a Civil Remedy Notice of Insurer Violations ("CRN") with the Florida Department of Financial Services (Doc. 77 ¶ 15; Doc. 77-2.) Empire then invoked the policy's appraisal provision.

(Doc. 77 ¶ 17.) The appraisal panel issued an award for Sandpiper, but Empire "failed to tender proper insurance benefits . . . until over two (2) years following the filing of the CRN." (Doc. 77. ¶¶ 18–19 (emphasis original).)

Sandpiper sued in Florida state court, and Empire removed the case to this Court. (Doc. 1.) Sandpiper then amended its pleading to include a request for punitive damages under Florida law. (Doc. 42 ¶¶ 32–36.) Empire moved for dismissal, arguing the amended complaint's allegations could not support a claim for punitive damages. (Doc. 43.) The Court agreed, granted the motion, and gave Sandpiper leave to amend. (Doc. 75.) Sandpiper filed a Second Amended Complaint (Doc. 77), which includes a renewed prayer for punitive damages under sections 624.155 and 768.72, Florida Statutes, that Empire again seeks to dismiss (Doc. 79).

Sandpiper alleges Empire has implemented a process by which it

> attempt[s] to reduce [its] financial exposure for [claims] either by subjecting the claim to an error-ridden, lackadaisical adjustment process, or by suggesting improper repair methodology; but ultimately, when put to task and held to the proper standard for adjustment of a claim . . . is found to owe an amount numerous times [over] the initial evaluation.

(Doc. 77 ¶ 32.) Sandpiper details how Empire handled its claim, alleging: (1) Empire conducted a haphazard inspection that failed to address several aspects of Sandpiper's property damage, then determined the damages were

3

"minor and sporadic" and fell below Sandpiper's deductible; (2) Sandpiper's challenge to that assessment led to reinspection and an increased damage valuation of $76,326.85, which repairs were to be completed using the roof tile harvesting method; and (3) after Sandpiper filed a CRN and the claim went to appraisal, the appraisal panel found the total of Sandpiper's damages to be $1,786,907.97. (Doc. 77 ¶ 34.)

And Sandpiper supports its allegation that this process amounts to a general business practice by describing four other Hurricane Irma claims that share similarities with its own. Although each claim is different, a few themes recur: several of the same adjusters, conducting insufficient inspections, providing low-ball initial damage assessments, and directing insureds to use the roof tile harvesting method for repairs. (Doc. 77 ¶ 36.) Sandpiper also alleges that Empire continued to press for roof tile harvesting even though, in two of the four claims, the adjusters expressed disapproval of the method. (Doc. 77 ¶ 36.) Together, Sandpiper presents five instances of similar claim handling and contends this constitutes a pattern or general business practice. (Doc. 77 ¶¶ 37–38.)

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant can attack a complaint for failing to state a claim upon which relief

can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A party must plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In considering a motion to dismiss, a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. See Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). But acceptance of a complaint's allegations is limited to well-pleaded allegations. See La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## DISCUSSION

Empire argues that Sandpiper's allegations "remain insufficient" to sustain a punitive damages claim. (Doc. 79 at 4.) As to punitive damages, Florida law states:

> (5) No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:
>
> (a) Willful, wanton, and malicious;

5

>   (b) In reckless disregard for the rights of any insured; or
>
>   (c) In reckless disregard for the rights of a beneficiary under a life insurance contract.

Fla. Stat. § 624.155(5)(a)–(c).  Further, "[u]nder Florida law, merely setting forth conclusory allegations in the complaint is insufficient to entitle a claimant to recover punitive damages." Porter v. Ogden, Newell & Welch, 241 F.3d 1334, 1341 (11th Cir. 2001) (discussing section 768.72's requirements for a prayer of punitive damages) (citation omitted).  "Instead, a plaintiff must plead specific acts committed by a defendant." Id. (citation omitted).

In its order granting Empire's first motion to dismiss, the Court stated that, although Sandpiper had adequately alleged that "Empire acted in reckless disregard for [Sandpiper's] rights under the policy," it had not "shown that Empire has a general business practice of doing so."  (Doc. 75 at 4.)  The Court faulted the amended complaint for not alleging how often Empire acted with reckless disregard, how conduct had become ingrained within Empire, and how many different claims this behavior occurred in or over what span of time.  (Doc. 75 at 4.)

In its second amended complaint, Sandpiper has alleged a similar pattern and practice over five claims—often with the same players—involving delay, underestimation of damage, insufficient inspections, and

6

directives to use a repair method that even Empire's adjusters did not believe in; all following the damage caused by Hurricane Irma.

Empire argues the claims Sandpiper references are distinct and distinguishable, noting that two of the CRNs were ultimately withdrawn by the insureds, and two of the CRNs were filed by insureds represented by Sandpiper's counsel. It also contends that Sandpiper's second amended complaint relies on "insufficient conclusory allegations of a general practice." (Doc. 79 at 7.)

But contrary to Empire's arguments, the second amended complaint's allegations are not simply conclusory. Sandpiper has addressed the Court's conclusions from its previous order and supplied factual allegations of a general practice of bad-faith handling of claims, all without the benefit of discovery.[2]

Sandpiper has not simply relied on allegations of its own experience with Empire's claim handling; it alleges additional claims handled within the last few years. Contra Goeseke v. Arch Specialty Ins. Co., No. 20-CV-24878-DLG, 2021 WL 2462332, at *4 (S.D. Fla. Feb. 10, 2021) ("Plaintiffs' [c]omplaint is bereft of any allegations indicating that [d]efendant Arch

---

[2] It should go without saying that whether Sandpiper will ultimately prevail is an open question. The Court concludes only that Sandpiper has properly stated a claim and should be permitted to conduct discovery and offer evidence to support its allegations.

7

Insurance had a general business practice of processing insurance claims in bad faith. In fact, [p]laintiffs' allegations involved only one claim – the one at issue."); Niagara Distribs., Inc. v. N. Ins. Co. of New York, No. 10-61113-CIV, 2010 WL 11441045, at *3 (S.D. Fla. Oct. 22, 2010) (dismissing punitive damages claim where "the [c]omplaint [was] devoid of any specific facts whatsoever relating to any conduct by [d]efendant in regard to any insured other than [p]laintiff"); 316, Inc. v. Maryland Cas. Co., 625 F. Supp. 2d 1179, 1184 (N.D. Fla. 2008) ("Plaintiff instead attempts to have [the court] extrapolate from [d]efendant's alleged conduct toward a single insured—[p]laintiff—a 'general business practice' but provides no factual foundation to support such a leap. In this way, the allegations about [d]efendant's business practices are untethered to any supporting factual allegations and are impermissibly speculative, rather than plausible."). The Court concludes this is enough to survive Empire's motion to dismiss.

Accordingly, Empire's Motion to Dismiss (Doc. 79) Sandpiper's prayer for punitive damages in the Second Amended Complaint is **DENIED**.

**ORDERED** in Fort Myers, Florida on September 20, 2022.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE