UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SANDPIPER ISLE
CONDOMINIUM ASSOCIATION,
INC.,

        Plaintiff,

v.

EMPIRE INDEMNITY
INSURANCE COMPANY,

        Defendant,
_____/

Case No. 2:21-cv-105-KCD

## **ORDER**

Before the Court is Defendant Empire Indemnity Insurance Company's Motion for Protective Order as to Deposition Testimony and Evidence After August 10, 2018. (Doc. 154.)[1] Plaintiff Sandpiper Isle Condominium Association, Inc. responded in opposition (Doc. 156), making this matter ripe. Because the motion was filed shortly before the deposition at issue—an event Empire sought to prevent—the Court provided the parties with its decision via endorsed order so they would have time to prepare accordingly. (*See* Doc. 157.) This order explains that decision.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

This lawsuit stems from Hurricane Irma. Sandpiper, a condominium association in Bonita Springs, suffered roof damage during the storm. (Doc. 77-2 at 3.) So it submitted a claim to its insurer, Empire. (*Id.* ¶¶ 7-9.)

According to the complaint, Empire accepted coverage but adjusted the claim in bad faith. (*Id.* ¶¶ 13-14.) That led Sandpiper to file a Civil Remedy Notice of Insurer Violations (CRN)—a statutory prerequisite to filing a bad faith claim—with the Florida Department of Financial Services. (*Id.* ¶ 15.) Among other things, the CRN alleged that Empire had denied Sandpiper's claim "without conducting [a] reasonable investigation" and refused to settle in good faith "when, under all the circumstances, it could and should have done so, had it acted fairly and honestly." (*See* Doc. 77-2 at 2.) Sandpiper specifically took Empire to task for its proposed repair method—tile harvesting—explaining that such a repair could not restore the property to its pre-loss condition. (*Id.* at 3, Doc. 77-2 at 2.)

Florida law provides "a 60-day safe harbor period in which to cure the allegations in a CRN." *Life Changing Ministries, Inc. v. Canopius US Ins., Inc.*, No. 5:15-CV-59-OC-30PRL, 2016 WL 6947341, at *1 (M.D. Fla. Nov. 28, 2016). So Empire had until August 10, 2018, to correct the circumstances outlined in the CRN or pay Sandpiper's damages. It did neither. (*See* Doc. 77 ¶ 19.) Instead, Empire waited nearly a year to demand appraisal. (*Id.* ¶ 17.) Two

years later, the panel ruled for Sandpiper. (*See id.* ¶¶ 18-19, 34.) That cleared the way for Sandpiper to bring this bad-faith lawsuit.

Now, recall that the CRN objected to Empire's proposed repair method. When Sandpiper filed the CRN, Empire had an email from the Chief Building Official for Bonita Springs, Peter Haigis, that it says indicated tile "harvesting was a viable repair option allowed by the City." (*See* Doc. 154 ¶ 6, Doc. 154-2.) Yet by the time it demanded appraisal, Empire had received another email from Haigis. (*Id.* ¶ 5, Doc. 154-1.) This one was not as favorable. According to Haigis, tile harvesting would not be appropriate; the roofs would need to be replaced in their entirety:

> As we discussed and based on the pictures supplied in the drop-box, these roofs were needing more than 25% of the tiles replaced, and whether or not its from mining another roof or not, the existing building code requires that the entire roof must be replaced. In addition, the removal of tiles that were attached with screws, renders the underlayment barriers compromised which will result in future leaks and damage.

(Doc. 154-1.)

The parties are now conducting discovery, and Sandpiper has noticed Haigis' deposition. (*See* Doc. 154-4.) Empire sees where this is going, and it's worried that Sandpiper intends to introduce evidence that it continued to handle the claim in bad faith after the safe harbor period expired on August 10, 2018. (Doc. 154 ¶¶ 4-7.) Empire wants to head that off. It therefore asks the Court to "enter a protective order precluding [Sandpiper] from questioning

3

witnesses including, Peter Haigis, regarding any information, conversations, or acts which occurred after August 10, 2018 and precluding [it] from [conducting] any discovery of evidence, information and documents after [that date]." (*Id.* ¶ 11.)

According to Empire, evidence that it engaged in bad faith after the safe harbor period expired is irrelevant to this lawsuit, since it could not have been remedied during the safe harbor. (*Id.* at 9.) It also contends that this line of discovery would be annoying and and add "unnecessary fees and costs" to its defense. (*Id.*)

Sandpiper disagrees. It argues that evidence of Empire's conduct after the safe harbor period "is highly relevant to demonstrate a continuation of the same bad faith conduct identified in the CRN, address the defenses raised by [Empire], which all incorporate [Empire's] post [safe harbor] period conduct, and form the basis for [its] proof of general business practice with intent in seeking punitive damages." (Doc. 156 at 2.)

## II. Standard of Review

"Federal Rule of Civil Procedure 26 generally controls discovery in civil cases." *Michaels v. Embry-Riddle Aeronautical Univ. Inc.*, No. 6:23-CV-1527-WWB-RMN, 2024 WL 3639452, at *1 (M.D. Fla. June 17, 2024). It "allows for broad discovery, which may include any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

4

*Pataro v. Castellon*, No. 22-20866-CIV, 2023 WL 4014740, at *2 (S.D. Fla. May 11, 2023). In this context, relevance "include[s] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Shultz v. Aetna Life Ins. Co.*, No. 1:16-CV-94-MHT, 2016 WL 6637748, at *1 (M.D. Ala. Oct. 25, 2016).

Consistent with this approach to discovery, "[t]he Federal Rules of Civil Procedure presumptively entitle a party to depose any person without leave of court on issues relevant and proportional to the case." *Adigun v. Express Scripts, Inc.*, No. 2:16-CV-39, 2017 WL 959583, at *4 (S.D. Ga. Mar. 10, 2017). Depositions can be essential to discovering relevant facts and acquiring key admissions from parties or witnesses. Sometimes, they're "indispensable." *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y. 1989).

While the scope of discovery is broad, "it is not without limits." *Pinson v. JPMorgan Chase Bank*, No. 13-80720-CIV, 2014 WL 12621617, at *2 (S.D. Fla. Nov. 26, 2014). "When discovery crosses the bounds of Rule 26, [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2024 WL 5397825, at *1 (M.D. Fla. May 24, 2024).

The burden of proving good cause lies with the party seeking the protective order. *Syrisko v. Kent Int'l, Inc.*, No. 8:19-CV-1917-T-02JSS, 2020

WL 13389275, at *1 (M.D. Fla. July 29, 2020). To meet their burden, "[t]he party requesting a protective order must make a specific demonstration of facts in support of the request, rather than conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Regions Bank v. Kaplan*, No. 8:12-CV-1837-T-17MAP, 2015 WL 13708449, at *1 (M.D. Fla. Aug. 24, 2015).

"When evaluating whether a movant has satisfied his burden of establishing good cause for a protective order preventing a deposition, a court should balance the non-moving party's interest in obtaining discovery and preparing for trial against the moving party's proffer of harm that would result from the deposition." *Vivid Ent., LLC v. Baserva*, No. 213CV524FTM29DNF, 2015 WL 12866965, at *1 (M.D. Fla. Jan. 6, 2015). That said, "courts rarely issue protective orders preventing depositions outright." *Ocwen Loan Servicing, LLC v. Accredited Home Lenders, Inc.*, No. 608CV214ORL31GJK, 2008 WL 11335099, at *2 (M.D. Fla. Aug. 11, 2008).

### III. Discussion

Empire's motion concentrates on the relevance of the proposed discovery. As Empire understands the law, "the only relevant evidence to a bad faith action is the insurer's conduct that occurs prior to the expiration of the CRN or during the [safe harbor] period." (*Id.* at 6.) Applying that rule here, all evidence after August 10, 2018, is irrelevant.

Empire derives this rule from several decisions, each of which is distinguishable because it concerns a later stage in the proceedings. For instance, the court in *Fox Haven of Foxfire Condo. IV Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.* was attempting to narrow the issues on summary judgment. No. 2:13-CV-399-FTM-29CM, 2015 WL 667935, at *4 (M.D. Fla. Feb. 17, 2015). And the court in *Alexander v. Gov't Emps. Ins. Co.* was determining what evidence would be admissible at trial. No. 3:10-CV-287-J-32JRK, 2012 WL 5382051, at *3 (M.D. Fla. Nov. 1, 2012). Finally, *In re Simmons* addressed whether a bad faith claim belonged to an estate. 520 B.R. 136, 146 (Bankr. M.D. Fla. 2014).

We are concerned with whether the evidence Sandpiper seeks is discoverable. That's an important distinction since "it is axiomatic that the relevance standard at the discovery stage is broader than the relevance standard for the admission of evidence at trial or on summary judgment." *Skinner v. Progressive Mountain Ins. Co.*, No. 1:13-CV-00701-JOF, 2013 WL 12073464, at *7 (N.D. Ga. Nov. 14, 2013). Simply put, we're casting a broader net at this stage of the proceedings than the parties in *Fox Haven*, *In re Simmons*, and *Alexander*.

Empire has not shown that all evidence after August 10, 2018, would be irrelevant. While Sandpiper may not be able to use conduct after that date to show bad faith, Haigis could offer testimony relevant to other components of

7

the case. For instance, his testimony that the City would not allow tile-harvesting might prove pertinent to showing damages (*i.e.*, why Sandpiper had to replace its roof). The Court is simply not convinced that everything after August 10, 2018, is "wholly irrelevant" as needed to enter a protective order. *Commodity Futures Trading Comm'n v. Midland Rare Coin Exch. Inc.*, No. 97-7422-CIV, 1999 WL 35148749, at *4 (S.D. Fla. July 30, 1999).

One last thing. Empire also asks the Court to prohibit Sandpiper from seeking this evidence because its discovery would be annoying and embarrassing and add "unnecessary fees and costs" to its defense. (Doc. 154 at 9.) As the moving party, Empire needed to prove good cause through "a specific demonstration of facts in support of the request, ***rather than conclusory or speculative statements*** about the need for a protective order and the harm which will be suffered without one." *Kaplan*, 2015 WL 13708449, at *1 (emphasis added). Empire has not carried its burden, since it offers nothing but conclusory statements on these points. (*See* Doc. 154 at 5-6, 9.)

**ENTERED** in Fort Myers, Florida on May 28, 2025.

Kyle C. Dudek
United States Magistrate Judge